**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| ROGELIO SUSTAITA, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>        Defendant. ) | NO. EP-11-CV-00178-RFC<br>(by consent) |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423(d), 1382c(a)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is affirmed.

**PROCEDURAL HISTORY**

On February 21, 2006, Plaintiff filed his applications for DIB and SSI, alleging disability due to back pain that became disabling on February 8, 2005. (R:18, 99-101, 104-110, 128-29)[1] The application was denied initially and on reconsideration. (R:64-69, 75-78) Pursuant to Plaintiff's

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

request, an Administrative Law Judge (ALJ) held a hearing to review Plaintiff's application *de novo* on April 25, 2008, at which Plaintiff, a medical expert, and a vocational expert testified; Plaintiff was represented by an attorney and testified with the aid of an interpreter. (R:28-55, 79-80) The ALJ issued her decision on April 24, 2009, denying benefits on the basis that Plaintiff could perform other work. (R:18-27) Plaintiff's request for review was denied by the Appeals Council on January 5, 2011. (R:6-8) The Appeals Council granted Plaintiff an extension of time to file his appeal in federal court. (R:1)

On May 4, 2011, Plaintiff submitted his complaint along with a motion to proceed *in forma pauperis*. (Doc. 1) The motion was granted and his complaint was filed. (Docs. 4-5) The Commissioner filed an answer on July 13, 2011, and a certified copy of the transcript of the administrative proceedings was received on the same date.[2] (Docs. 13, 15) On September 16, 2011, Plaintiff's brief was filed. (Doc. 20) On October 17, 2011, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 21) On October 27, 2011, Plaintiff filed a Reply brief. (Doc. 22)

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the ALJ's finding that Plaintiff did not meet or equal the requirements of Listing 1.04 of the Regulations was made in error; and

2. Whether the ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence.

(Doc. 20:2)

---

[2] Both parties having filed notices of consent to proceed before a Magistrate Judge, this cause was reassigned to this Court on July 13, 2011, by order of District Court Judge Philip R. Martinez. (Docs. 3, 14, 16)

## DISCUSSION

*A.    Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

B.    *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity ("RFC") is what he can still do despite his limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

C.    *The ALJ's Hearing Decision*

First, the ALJ found that Plaintiff met the special insured status requirements on February 8, 2005, the date he alleges he became disabled, and continued to meet such requirements through

March 2011.  (R:19)  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since February 8, 2005.  (R:19-20)

At the second step, the ALJ found that Plaintiff had severe impairments including:

discogenic and degenerative disorders of the lumbosacral spine, which affect his ability to lift, stand and/or walk for prolonged periods of time, and perform some postural movements, including climbing and stooping.  I am also persuaded that Mr. Sustaita experiences pain, which affects his ability to perform some basic mental work activities, including working with others, concentrating, and attending to task.

(R:20, 22)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments.  (R:22-23)  She compared Plaintiff's back problems to the severity criteria in Listing 1.04, describing presumptively disabling spinal disorders.  (R:23)  The ALJ found very little objective medical evidence in Plaintiff's treatment record and none that established a Listing-level impairment at any time since his alleged onset date in February 2005.  (R:23)

The ALJ found that:

[Plaintiff] has the residual functional capacity for a range of sedentary work. Specifically, [Plaintiff] is able to perform jobs that require him to lift and carry up to 10 pounds; sit for up to six hours total during an eight-hour work day; stand and/or walk for up to two hours total during an eight-hour work day, 15 minutes at a time; and push and pull with both upper and lower extremities occasionally. [. . . Plaintiff] is able to perform jobs that would never require him to climb ladders, ropes, or scaffolding and only occasionally require him to climb ramps and stairs, balance, stoop, kneel, crouch, crawl, or twist at the waist. [. . . Plaintiff] is able to work where he would be able to avoid concentrated exposure to hazards . . . .  In spite of his pain, [Plaintiff] is able to understand, remember, and carry out simple instructions, in an object-focused work environment.

(R:23)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. (R:25) Plaintiff has been a younger individual throughout the period at issue. (*Id*.) Plaintiff's educational background was considered the same as if he were functionally illiterate because Plaintiff "is not able to communicate effectively in the English language." (*Id*.) Transferability of job skills was not determinative because Plaintiff was limited to simple work such that he would be unable to use any skills he might have acquired in other skilled or semi-skilled jobs. (*Id*.)

At the fifth step, considering Plaintiff's age, education, work experience, and RFC, as well as vocational expert testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R:26)  Specifically, the vocational expert testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative assembly and bench worker occupations including DOT Nos. 700.687-026, bench hand or charger II, and 700.687-062, jewelry preparer or assembler. (*Id*.)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since his alleged onset date of February 8, 2005, through the date of the ALJ's decision. (R:26)

*D.     Analysis*

    **1.     The ALJ's finding that Plaintiff did not meet or equal the requirements of Listing 1.04 of the Regulations is not the result of legal error and is supported by substantial evidence.**

Plaintiff claims that the ALJ failed to correctly evaluate whether Plaintiff's impairments meet or equal Listing 1.04. (Doc. 20:4)  Plaintiff contends that the ALJ committed legal error in four respects.  First, the ALJ failed to discuss the evidence offered in support of Plaintiff's claim for

disability and explain why she found Plaintiff not disabled, as required by *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). (Doc. 20:3-4)  Second, the ALJ failed to consider Plaintiff's stated financial inability to afford medical care. (Doc. 20:7)  Third, the ALJ failed to obtain the testimony of a medical expert regarding the progression of Plaintiff's impairment. (*Id.*)  Fourth, Plaintiff argues that the ALJ failed to resolve conflicts in the evidence. (*Id.*)  Plaintiff also argues that the evidence in the record indicates that Plaintiff's impairment did meet or equal all the criteria in Listing 1.04A. (Doc. 20:4)

Regarding the Plaintiff's first argument, in *Audler*, the Fifth Circuit found the ALJ's summary conclusion—that the medical evidence indicated that Plaintiff's impairments, while severe, were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P—to be beyond meaningful judicial review because the ALJ offered nothing to support her conclusion at step three. *Audler*, 501 F.3d at 448.  The Fifth Circuit, however, made clear than an exhaustive point-by-point discussion is not required. *Id.*  Further, any error in providing a conclusion beyond judicial review is subject to harmless error analysis. *Id.*  The Court found the error harmful in *Audler* because a diagnostic checklist indicated that Audler met the criteria of a listing and there was no medical evidence to contradict such findings. *Id.*

The ALJ in this case identified Listing 1.04, noted that very little objective medical evidence was contained in Plaintiff's treatment record, that most of what did exist predated his alleged onset date, and that nothing after his alleged onset date established an impairment as severe as that described in Listing 1.04. (R:23)  The ALJ also referred to her discussion of the evidence in other sections of the decision. (*Id.*)  The Court does not find the ALJ's conclusion to be beyond judicial review.

Second, Plaintiff contends that the ALJ erred in failing to acknowledge Plaintiff's inability to afford medical treatment although the ALJ highlighted the absence of medical records. (Doc. 20:7) A disabling condition for which one cannot afford treatment or medicine, and can find no way to obtain it, remains disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Where there is no evidence that a condition would be disabling without regular treatment, however, the ALJ may properly consider the lack of treatment otherwise unavailable due to indigence as evidence of non-disability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)

The ALJ stated that she considered the inconsistency between Plaintiff's failure to seek regular, ongoing medical treatment at any time under review despite his allegations of constant severe pain and substantial functional limitations. (R:20) This was considered in the context of other evidence related to the ALJ's evaluation of the critical issue of Plaintiff's credibility, including: Plaintiff's varied complaints regarding his medical issues; Plaintiff's 2004 discharge based on evidence that he had been dishonest with his doctors regarding the ongoing symptoms and limitations resulting from his injuries;[3] Plaintiff's failure to mention or exhibit signs of back pain at the low cost clinic until July 2006, although he first started going to the low cost clinic for medical care in March 2006 after filing his application for benefits in February 2006; and Plaintiff's failure to mention in any of his disability reports or to his clinic health care providers that he was seeing a doctor in Mexico. (R:20-22) Where Plaintiff was seeking and had found a way to obtain medical

---

[3] In June 2004, Plaintiff's company provided a videotape of Plaintiff showing him playing soccer- running, bending, kicking the ball, balancing on one leg while kicking the ball, and running to and from a house to a car. (R:174) Dr. Vinge noted that Plaintiff's action on the videotape did not correspond to Plaintiff's physical examination of June 2004 in which Plaintiff reported pain with range of motion in all directions. (R:174) Dr. Vinge discharged Plaintiff as a patient. (R:173)

8

care at the low cost clinic for other ailments between March and July 2006, Plaintiff's inability to otherwise afford medical treatment fails to explain his failure to also seek treatment for, mention, or exhibit symptoms of his back impairment at those same medical visits.

Third, Plaintiff alleges that the ALJ erred by failing to obtain expert testimony to determine the severity of Plaintiff's lumbar spine impairment since February 2005. (Doc. 20:7) Plaintiff argues that an ALJ is required to obtain medical expert testimony when there is a question about the disability onset date of a slowly progressive impairment. (Doc. 20:7 (citing *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993), SSR 83-20)). The Court notes that an onset date was not in question, it being determined that Plaintiff was not disabled at any time since the alleged onset date. Nor could medical expert testimony have provided objective medical evidence to support Plaintiff's claim for benefits. The hearing before the ALJ took place in April 2008 and the record already contained medical reports from May and June 2007 and a report that by the end of March 2008, Plaintiff had met all physical therapy goals. (R:22, 28, 303)

Fourth, Plaintiff contends the ALJ erred by giving significant weight to Dr. Midez's opinion without resolving conflicts between the medical records and the consultative physician's opinion. (Doc. 20:7) Dr. Midez stated that the February 2004 MRI did not show any significant abnormalities. (R:239) This may have been a typographical error; the MRI report stated that there were "no signal abnormalities in the vertebral bodies." (R:235) Regardless, Dr. Midez's statement did not explicitly contradict the MRI report. Dr. Midez noted that Plaintiff has osteoarthritis and degenerative joint disease, a history of disc problems, and peripheral radiculopathy. (R:239) Dr. Midez did not state that there were no abnormalities on the MRI report, only that such abnormalities were not significant. (*See* R:239) Significantly, the two agency doctors, on initial review and

reconsideration, who reviewed Plaintiff's medical records, including the MRI report, dismissed Plaintiff's applications at step two, finding the evidence did not support a finding of a severe impairment, much less an impairment meeting or equaling listing-level severity. (R:242, 258) Further, the ALJ noted that the 2004 MRI revealed a number of degenerative, discogenic and soft tissue abnormalities which led to Plaintiff being treated for thoracic and lumbar strain. (R:21) The ALJ did not err by giving significant weight to Dr. Midez's opinion.

Finally, Plaintiff argues that the record evidence indicates that Plaintiff's impairments meet the criteria in Listing 1.04A. (Doc. 20 at 5) The Court, however, reviews only whether there is substantial evidence to support the ALJ's determination that Plaintiff's impairment did *not* meet or equal a listing impairment. *See Greenspan v. Shalala*, 38 F.3d at 236.

Listing 1.04A, entitled Disorders of the spine, includes disorders such as spinal stenosis and degenerative disc disease. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04. To meet the listing, there must be (1) evidence of nerve root compression characterized by (2) neuro-anatomic distribution of pain, (3) limitation of motion of the spine, (4) motor loss (such as atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, (5) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

(1) *Evidence of nerve root compression*: The ALJ found that Plaintiff suffers from severe discogenic and degenerative disorders of the lumbosacral spine. (R:20) A lumbar MRI showed left sided disc protrusion with nerve root displacement at L5-S1 and multiple areas of degenerative joint disease from T5-T11, as reflected in a June 2004 report. (R:173) Plaintiff argues that the MRI of Plaintiff's lumbar spine on February 17, 2004, showed a focal disc protrusion in the left foraminal

region at L5-S1 resulting in severe neural foraminal stenosis, meaning the nerve passageways in the spine have less space than they used to, *possibly* leading to the compression or pinching of nerves. (Doc. 20:5 n. 1 (citing R:235))

(2) *Neuro-anatomic distribution of pain*: Records from 2004 and 2006 reflect Plaintiff's reports of pain extending down his left leg, pain bilaterally with straight leg raising, and in 2006, peripheral radiculopathy and continued pain radiating to the right hip.  (R:173, 238)

(3) *Decreased Range of Motion*: Records from 2004, 2006, and 2008 all reflect that Plaintiff experienced decreased range of motion.  (R:201, 239, 244, 246, 301-302)

(4) *Motor loss with sensory or reflex loss*: Records reflect slightly reduced strength bilaterally in Plaintiff's arms in 2004 (R:200); sensory disturbances predominantly in Plaintiff's right leg in 2006 (R:244); mild loss of sensation along the lateral portion of his lower leg, dorsal and plantar portions of the left foot (R:246); impaired biomechanics of the cervical/thoracic/lumbar spine and tingling and numbness to digits on the right hand in 2008 (R:286, 288, 290); motor function test results in 2008 were 3/5 bilaterally to Plaintiff's hips and 2-/5 as to his abs (R:291).  Plaintiff also testified that his back injuries have resulted in muscle weakness in both his legs and that he has difficulty walking.  (R:41)

(5) *Positive straight-leg raising test*: Records reflect a positive straight-leg raising test in 2004 (R:173) and a positive bilateral slump test, which includes a variation of the straight-leg raising test, in 2008.  (R:291; Doc. 20:7 n. 3)

The ALJ did not address the individual criteria for Listing 1.04 impairments, what records might support which criteria, or why she found each individual record failed to support such criteria. The ALJ's explanation, however, when read together with the rest of her decision, is clear: much of

the criteria required for Listing 1.04A relies upon Plaintiff's subjective reports of pain and other symptoms to his medical providers and examiners, and on the critical issue of Plaintiff's credibility, the ALJ had determined that Plaintiff was not credible. (R:23) The ALJ found that no objective medical evidence in the record established an impairment as severe as described in Listing 1.04 and she could not rely upon medical records and tests which in turn relied upon Plaintiff's subjective reports of pain, symptoms, and limitations to establish such severity in light of her credibility determination. (*Id.*)

There is substantial evidence in the record to support the ALJ's credibility determination and thus to support the ALJ's determination that Plaintiff did not have an impairment that met or equaled an impairment at Listing 1.04A.

### 2. The ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence.

Plaintiff claims that the ALJ's finding at step five is not supported by substantial evidence because the ALJ's hypothetical question to the vocational expert did not specify Plaintiff's inability to communicate in English. (Doc. 20:8) Plaintiff argues that because the ALJ relied on vocational expert testimony at step five, the hypothetical questions on which the expert testimony is based must include all limitations supported by the record. (*Id.* (*citing Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988))

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional

disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d at 436.

The ALJ's hypothetical began "[a]ssume an individual of the same age, education and locational [sic] background as Mr. Sustaita." (R:48)  A person's language ability is one component of his or her educational background.  *See* 20 C.F.R. §§ 404.1564(b) and 416.964(b) ("The term 'education' also includes how well you are able to communicate in English since this ability is often acquired or improved by education").  The expert was present during the hearing and was aware that Plaintiff was thirty-five years old, had a ninth-grade education from Mexico, is unable to communicate effectively in English—unable to read or write in English and able to speak or understand very few words in English, and that Plaintiff had worked in the United States in the past despite his inability to communicate in English. (R:25, 33)  There was no contradictory evidence or testimony and thus there is nothing in the record that would suggest that the ALJ and the expert had different understandings of Plaintiff's educational background, including his language ability.  The ALJ's hypothetical question reasonably incorporated Plaintiff's inability to communicate effectively in English.  Plaintiff was represented by an attorney during the hearing who had an opportunity to clarify or amend the hypothetical questions posed to the expert.  Plaintiff's attorney did not pose any questions to more specifically address how Plaintiff's language limitation might render him unable to perform certain jobs or reduce the number of jobs available.  (R:53-54)

Even if the ALJ's hypothetical question should have specified Plaintiff's language limitations, any such error in the hypothetical would be harmless on this record.  The ALJ's failure

13

to explicitly specify Plaintiff's educational level including his language abilities does not cast doubt as to the existence of substantial evidence to support the ALJ's decision in this case.

There is substantial evidence in the record to support a finding that Plaintiff could perform the jobs identified by the expert. Plaintiff had worked for years in the United States despite his inability to communicate effectively in English. Although both of the positions identified by the expert at step five[4] require a maximum Level 1 Language skills as generally performed in the national economy, each of the positions the expert identified as Plaintiff's previous work required either a maximum language level 1 or 2 as generally performed.[5] (R:26, 47-48, 52); *see Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) ("DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than the range."). There is no evidence to suggest that the expert did not properly consider Plaintiff's educational background, including his inability to communicate effectively in English, in answering the ALJ's hypothetical questions. (R:52)

Although the burden is initially on the Commissioner at step five, once the Commissioner makes the requisite showing at step five, the burden shifts back to the Plaintiff to rebut the finding that there are jobs that exist in significant numbers that the Plaintiff could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Plaintiff did not elicit any testimony from the vocational expert to rebut the finding based on Plaintiff's inability to communicate effectively in

---

[4] The vocational expert testified that Plaintiff could perform the jobs of bench hand, DOT 700.687-026, and jewelry preparer, 700.687-062. (R:26, 52)

[5] The vocational expert testified that Plaintiff had previously performed the following jobs: machine operator, DOT 786.685-030 (Language Level 2), a material handler, DOT 929.687-030 (Language Level 1), truck driver helper, DOT 905.687-010 (Language Level 1), and a packer, sorter, DOT 920.587-018 (Language Level 1). (R:47-48)

English.  The only questions Plaintiff's counsel put forth involved an alleged inability to reach forward or overhead.  (R:53-54)

The ALJ's hypothetical reasonably incorporated Plaintiff's inability to communicate effectively in English, Plaintiff's counsel had an opportunity to correct any deficiencies in the ALJ's question and to rebut the vocational expert's testimony that jobs existed in significant numbers that Plaintiff could perform.  Nothing in the record calls into doubt the substantiality of the evidence supporting the ALJ's step-five determination.  Plaintiff is not entitled to relief on this claim.

## CONCLUSION

The Court concludes that the ALJ's findings are not the result of legal error and are supported by substantial evidence.  The Commissioner's decision is, therefore, **AFFIRMED**.

**SIGNED and ENTERED on August 17, 2012.**

_____
**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**